UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION


MICHAEL TULLGREN,                    :
                                     :
               Plaintiff,            :   Civil Action
                                     :   No. 1:22-cv-00856-MSN-IDD
          v.                         :
                                     :
BOOZ ALLEN HAMILTON INC., et         :   December 1, 2022
al.,                                 :   9:54 a.m.
                                     :
               Defendants.           :
                                     :
.............................. :

ANDRE HALL, et al.,                  :
                                     :
               Plaintiffs,           :   Civil Action
                                     :   No. 1:22-cv-00857-MSN-IDD
          v.                         :
                                     :
CAPITAL ONE FINANCIAL                :   December 1, 2022
CORPORATION, et al.,                 :   9:54 a.m.
                                     :
               Defendants.           :
                                     :
.............................. :


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

 For the Plaintiffs:        MILLER SHAH LLP
                            James C. Shah, Esq.
                            John Claude Roberts, Esq.
                            1845 Walnut Street, Suite 806
                            Philadelphia, PA 19103



                    (Continued)

(Continued)

For the Plaintiffs:          TYCKO & ZAVAREEI LLP
                             Glenn Edward Chappell, Esq.
                             2000 Pennsylvania Avenue NW
                             Suite 1010
                             Washington, D.C. 20036

For the Defendants:          MORGAN LEWIS & BOCKIUS LLP
                             Matthew James Sharbaugh, Esq.
                             Frank H. Williams, III
                             1111 Pennsylvania Avenue NW
                             Washington, D.C. 20004

                             Jeremy P. Blumenfeld, Esq.
                             Jared R. Killeen, Esq.
                             1701 Market Street
                             Philadelphia, PA 19103

Court Reporter:              Diane Salters, B.S., CSR, RPR, RCR
                             Official Court Reporter
                             United States District Court
                             401 Courthouse Square
                             Alexandria, VA 22314
                             Email: Dianesalters.edva@gmail.com
                             Telephone:  (301) 338-8033

Proceedings reported by machine shorthand.  Transcript produced by computer-aided transcription.

Proceedings

THE DEPUTY CLERK:  *Michael Tullgren v. Booz Allen Hamilton, et al.*, Case Number 22-cv-856, and *Hall, et al. v. Capital One Financial Corporation, et al.*, Case Number 22-cv-857. Will the parties please note their appearances for the record.

MR. SHAH:  Good morning, Your Honor.  James Shah on behalf of Miller Shah.

THE COURT:  Good morning.

MR. ROBERTS:  Good morning, Your Honor.  John Roberts, on behalf of plaintiffs in both cases, from Miller Shah.

THE COURT:  Good morning.

MR. CHAPPELL:  Good morning, Your Honor.  Glenn Chappell from Tycko & Zavareei on behalf of plaintiffs in both cases.

THE COURT:  Good morning.

MR. BLUMENFELD:  Good morning, Your Honor.  Jeremy Blumenfeld from Morgan Lewis on behalf of defendants.

THE COURT:  Good morning, Mr. Blumenfeld.

MR. SHARBAUGH:  Good morning, Judge.  Matthew Sharbaugh from Morgan Lewis on behalf of defendants.

THE COURT:  Good morning.

MR. KILLEEN:  Good morning, Your Honor.  Jared Killeen from Morgan Lewis on behalf of the defendants.

THE COURT:  Good morning.

MR. WILLIAMS:  Good morning, Your Honor.  Frank Williams, III, on behalf of the defendants.

*Proceedings*

THE COURT:  Good morning.  Very good.  Well, good morning to you-all, and I'm delighted to be starting court early.  It's a long tradition here in the Eastern District of Virginia, and I'm pleased you were here before ten o'clock.

This matter comes before the Court on motions to dismiss in both of the cases which were called, *Tullgren v. Booz* and *Hall v. Capital One*.  I saw, as I reviewed the pleadings and realized that we have the same lawyers on both cases, that for purposes of efficiency, we could call the cases together.  I don't think that I need to or it would be appropriate to consolidate the cases formally, but I want to make sure that both sides agree that it's appropriate to simply have one argument addressing the fundamental issues and that the Court will make a decision that applies in both cases, although I would issue orders appropriately in both cases.

Does anyone have any objection to that?  Mr. Shah?

MR. SHAH:  Plaintiffs have no objection, Your Honor.

MR. BLUMENFELD:  That's fine with us, Your Honor.  Thank you.

THE COURT:  Likewise, let me, just in terms of housekeeping before we turn to the substance of the motion, address the motions for leave to file the amicus briefs.  I know that there were amicus briefs filed in both cases.  They weren't the identical parties, but they were substantially similar, the Chamber of Commerce and the various other groups.  I've reviewed

*Proceedings*

those motions and the oppositions.  I am going to deny those motions.  I will not grant leave to file those amicus briefs.  Although I appreciate the effort and work that was put into this, I do find that the defendants are ably represented by competent counsel and the matters have been fully briefed and that I can certainly understand the public interest and the industry's interest in this issue, but this isn't the Supreme Court, it's not the Fourth Circuit.  This is a motion to dismiss under 12(b)(6).  I'm looking at the complaint, the facts that are alleged.  I will apply the law.  I don't need to address the arguments that are in those amicus briefs, and so that motion is denied.

So that leaves us with the motions to dismiss filed by the defense in both cases.  I've received those motions, memoranda.  I've reviewed the oppositions filed by plaintiffs in those cases and the reply briefs.  And so the matter is fully briefed before the Court.  I am mindful of the fact, as I've reviewed many of the other cases from around the country, that the law firm on the plaintiffs' side has been on many of those cases, and Mr. Blumenfeld, yourself and your law firm has been on the other side of those cases, so you're used to these arguments and we don't need to repeat them all from the beginning.  So you can assume I'm familiar with your arguments, but I'll hear whatever you have to say.

MR. BLUMENFELD:  Thank you very much, Your Honor.

THE COURT:  Thank you.

MR. BLUMENFELD:  May it please the Court, my name is Jeremy Blumenfeld, and I represent defendants in both cases.

As the Court's aware, plaintiffs allege breach of fiduciary duty claims regarding the plan's offering of BlackRock target-date funds as investment options when four other target-date funds allegedly performed better.  These allegations don't state a claim as a matter of law.

A few principles, and then I'll dive into the argument, Your Honor.  First, plan fiduciaries don't need to pick the best performing funds, and the corollary to that, Your Honor, is that there is no cause of action for not picking the best performing funds.  The Supreme Court, this past January, held that the plausibility of allegations of a fiduciary breach must account for the range of reasonable judgments that fiduciaries may make. And since the Supreme Court's decision in *Hughes*, the courts of appeals have universally rejected investment challenges by alleging underperformance, comparing funds that have some similarities and some differences.  We talk about these cases in our brief, but just to name them:  *Albert v. Oshkosh* out of the Seventh Circuit, *Smith v. CommonSpirit* out of the Sixth, *Matousek v. MidAmerican* out of the Eighth, and *Davis v. Salesforce* out of the Ninth.  Notably, Your Honor, *Smith v. CommonSpirit* and *Davis v. Salesforce* also involved target-date fund allegations, that is, comparisons of one target-date fund to

*Proceedings*

one or another target-date fund.

Even before the Supreme Court's decision in *Hughes*, the Eighth Circuit, in *Meiners v. Wells Fargo*, rejected another challenge to Wells Fargo target-date funds on the basis that they were underperforming as compared to Vanguard target-date funds, the same Vanguard target-date funds that plaintiffs point to as comparators here.  The grounds for dismissal in those cases apply equally here.  There are really three reasons for it, Your Honor, as we set forth in our papers:  One, the lack of a meaningful benchmark; two, plaintiffs are just cherry-picking a few target-date funds out of a universe of 28 -- or, really, more than that -- target-date funds that exist in the marketplace; and, three, the performance differences are small.  I'm going to focus my remarks, Your Honor, on the meaningful benchmark aspect, and then I'll have a few remarks on the other two towards the end.

There are several reasons that comparator funds here don't provide a meaningful benchmark as a matter of law.  First, the comparator funds are active funds, at least two of them, as compared to the BlackRock funds, which are passively managed target-date funds.  This difference matters.  It's not just a naming convention.  It's what the Sixth Circuit looked at in *Smith v. CommonSpirit;* it's what the Eighth Circuit looked at in *Davis v. Washington University in St. Louis;* and it was the basis for the Ninth Circuit's decision in *Davis v. Salesforce*.  It's

also, on the face of the complaint here, reflected in the fact that these investments have different risks and have different investment strategies.  Paragraph 27 of the Capital One complaint and paragraph 25 of the Booz Allen complaint admit that active funds are not designed to address different risks and have different strategies.

The second difference, Your Honor, is the glide path, that is, "through retirement" versus "to retirement."  The BlackRock funds are to-retirement funds.  All the comparator funds that plaintiffs point to are through retirement.  Again, that's not just a nomenclature issue; it means they are designed to address different risks.  It's not that one is better than another or worse than another; they're just not meaningful benchmarks for each other because they are designed to accomplish different things.  That's reflected in the DOL guidance, which is attached as Exhibit 2 to our motion to dismiss.  It's also, again, on the face of the complaint.  Here, it's paragraph 26 of the Capital One complaint and paragraph 24 of the Booz Allen complaint.

The third difference, another meaningful one, is the equity holdings of the BlackRock target-date funds are different than the comparator funds, and there are really two subcomponents of that:  First, on the face of the complaint -- paragraph 39 of Capital One, paragraph 37 of Booz Allen -- the complaint admits that the equity holdings vary from among the BlackRock

*Proceedings*

target-date funds to the others.  Sometimes those differences are a little smaller; sometimes they're as much as ten percent or more, that is, a ten percent more difference in equity holdings. That's a meaningful difference in terms of the comparatorness and renders them inept comparators.  Again, the Eighth Circuit, in the *Meiners* case, affirmed Rule 12 dismissal on precisely those grounds, that is, the holdings of the target-date funds in the Vanguard target-date funds were a little bit different, about ten percent or so, from the holdings in the Wells Fargo target-date funds that were being challenged in that case; and as a result, the Eighth Circuit said it wasn't a meaningful benchmark and affirmed Rule 12 dismissal of those allegations.

THE COURT:  Do you think that argument, maybe, proves too much in the sense that you could potentially never have a comparator if you had to identify exactly the same allocation?

MR. BLUMENFELD:  So you could often have a comparator; and what the courts talk about in that context is where they are identical, that's sufficient.  Typically, this comes up in the context of different share classes of an investment option where everything about the investments are identical, and what you're left with is one happens to be cheaper, at least at first blush, than another.  And there are lots of reasons why somebody might pick one or the other of those, but at least courts have looked at that and said that provides a meaningful benchmark.

To use an analogy, Your Honor, to say that Person A

*Proceedings*

finished a race in 45 seconds and Person B finished a race in 55 seconds doesn't allow you to draw any inference about who is faster or slower unless you know they were running the exact same race, unless you know they were both running.  If one of them had hurdles, you can't say one is better than the other.  They're not meaningful comparators.  If one of them was a little bit longer than the other, they're not meaning comparators; you can't compare them.  The same is true here.  And, frankly, Your Honor, that's what the Sixth Circuit did in *Smith v. CommonSpirit*, the Seventh Circuit in the *Albert v. Oshkosh*, and the *Meiners* case from the Eighth Circuit, and *Davis v. Salesforce.*  All were dealing with those issues and precisely those kinds of things.

I would say further, Your Honor, plaintiffs' argument assumes that all equities are the same, but we know that's not true.  There are domestic equities and there are foreign equities.  There are large-cap equities and small-cap equities, and there are growth-oriented equities versus value-oriented equities, and the complaint here says nothing about any of those holdings.  And that's meaningful, Your Honor, because the allegation is that some of these funds hold 90-plus percent of their holdings in equities.  But if one of them has 90 percent of their holdings in large-cap domestic equities and the other has 90 percent of its holdings in small-cap foreign holdings, they're not meaningful comparators for each other.

Likewise, with respect to bonds, Your Honor, the

*Proceedings*

complaint actually doesn't say anything at all about the bond holdings of the comparator funds or the BlackRock target-date funds.  It assumes that anything that's not in equity would be a bond, and that assumption isn't right.  But even taking that assumption as true, the same problems arise.  First, you have a situation where the bonds vary by as much as 10 to 12 percent between the BlackRock funds and the comparator funds.  That's not to say that one allocation to bonds is better or worse than the other; it is to say they are different.  They're expected to have different returns and carry with them, also, different risks.

And the second part of that is, again, it says nothing about what those bonds are invested in.  You could have two bond funds that are 100 percent invested in bonds, but if one of them is in government agency bonds and the other is in corporate bonds, those aren't comparable.  They're going to carry with them different risks and different returns.  And what we know here is two things:  Nothing about the American funds or T. Rowe Price fund bond holdings as compared to the BlackRock funds.  There's no allegations about it and no information about it.  And with respect to the others, there is information comparing the BlackRock bonds to the Vanguard bonds and the Fidelity Freedom bonds.  And what we know from that, Your Honor, is that they invest -- putting aside the percentages, they invest in different kinds of bonds.  Again, it's not to say that one is better than the other or worse than the other.  They're just different, and

*Proceedings*

they carry with them different risks and, therefore, expected different returns.  They are not meaningful benchmarks for each other.

Plaintiffs' response, essentially, Your Honor, is to say that all of these issues are fact issues and that the Court can never decide whether something is a meaningful benchmark or not.  With respect, Your Honor, that's just not the law.  The Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth Circuit all considered these issues in the context of Rule 12 motions, and all found that the claims failed as a matter of law for lack of a meaningful benchmark.  And the reason is you can't infer imprudence based on investments that are not comparable having different performance.  If you could, then a plaintiff could sue over a bond fund saying that an equity fund performed better and just say, Well, whether it's a meaningful benchmark or not is a fact issue.  This is really no different.

You also could compare a target-date fund to not another target-date fund.  Why not just the S&P 500 Index and say that the S&P 500 performed better than all of the target-date funds we're talking about and, therefore, they are all imprudent investment options?  They're not meaningful benchmarks for each other, and you can't do that, and it is certainly appropriate to consider in the context of a Rule 12 motion.  That's clear from the Supreme Court's decision in *Hughes* and all of the appellate decisions after it.

*Proceedings*                                                          13

So what are we left with, Your Honor?  What are the other allegations of imprudence in the complaint here?  There are none.  There are no red flags about other investors abandoning the BlackRock funds.  There are no allegations of press reports that are critical of the BlackRock funds.  There are no allegations that the manager, BlackRock, was a new manager or inexperienced or that the funds had an insufficient track record, and there are no allegations of self-dealing or excessive costs or anything along those lines.

And just look at the cases that they looked to in support -- and I know we talk about some of those in our reply brief -- there's one in particular that I'd like to mention that I don't believe was in our reply brief, but looking back at the briefing, I thought it would be worth addressing, and that's the *Williams v. Centerra Group* case.  It's cited in their brief at pages 10 to 11.  A couple of observations about that case: First, it predates the Supreme Court's decision in *Hughes*.  It predates *Oshkosh* and *CommonSpirit* and *Davis v. Salesforce* and all the other cases I've been talking about.  But even putting that to one side, listen to what the allegations were in that case and what that case was about.  Aon was hired as an investment manager to manage the Centerra 401(k) plan, and the allegations were shortly after being hired, Aon came in and replaced all of the 401(k) plan investment options in the Centerra plan with Aon investment options.  This is a quote from the court's opinion

*Proceedings*

denying the motion to dismiss, a part that plaintiffs don't talk about in their papers, where the court is talking about the allegations that the plaintiffs made that made the claim plausible:  Plaintiffs contend the following allegations support a plausible inference of imprudence:  One, AHIC -- that's Aon Hewitt Investment Consulting -- benefited directly and indirectly when it chose to invest the plan in its affiliated Aon trusts, creating a significant conflict of interest; two, despite the conflict of interest, AHIC failed to undertake an independent investigation of investment options available in the market before deciding to use its own products; and, three, AHIC hired an inexperienced manager without a meaningful track record, and the Aon trusts were newly created with insufficient performance history.  Of course, Your Honor, none of those facts exist here.  No allegations of self-dealing or financial conflict of interest, no allegations that BlackRock was an inexperienced manager or that the BlackRock funds had an insufficient performance history.  Instead, what we know from plaintiffs' brief and the documents that are incorporated into the complaint, BlackRock was a gold-rated investment manager highly rated for its people, process, and parent organization.

Your Honor, putting aside the meaningful benchmark point, I told you there were those two other arguments.  I just want to touch on those briefly.  And, in particular, without rehashing the arguments that were in our papers, I'd like to

*Proceedings*

direct the Court to Exhibit 1 to our motion to dismiss, which was the Morningstar Report. It's Docket 22-1 at page ID number 145. And, in particular, that shows the performance history of the BlackRock target-date funds in percentile rankings. It shows that the BlackRock LifePath Index funds, the funds that are being challenged here, over the prior three years were at the 33rd percentile, that is, they were in the top third of target-date funds --

THE COURT: I'm sorry to interrupt, but do I really need to consider that? Is that not outside the pleadings?

MR. BLUMENFELD: So, no, it is not outside the pleadings because they cite to it in, I think it's footnote 4 of the complaints in this case, and plaintiffs haven't objected to it being attached. The Court doesn't need to consider it, no, because the complaint is silent on the subject, but I think it sort of proves the point as to why plaintiffs' allegations are insufficient. And what it shows, Your Honor, is that the BlackRock funds were in the 33rd percentile over three years, the 29th percentile over five years, and the 37th percentile over ten years. That certainly is not outside the range of reasonable judgments that fiduciaries make. It's in the top third over the last three and five years and just shy of that over the last ten years. What that shows is that plaintiffs' allegations that the fund performance of the BlackRock funds was deplorable is only from their suggestion that you can compare it to just four funds

*Proceedings*

and ignore all of the other target-date funds in the marketplace.

THE COURT:  Well, I'm going to give plaintiffs' counsel a chance to address this, but you note in your pleadings -- and I believe looking back on it, maybe all these same lawyers were involved in the case in *Wehner v. Genentech* -- that the plaintiffs pointed to BlackRock TDF as a benchmark for a fund that was performing well as compared to an underperforming fund.

MR. BLUMENFELD:  Correct.  Also true, Your Honor.  And if you look at the performance of the other comparator funds they talk about in that Morningstar Report that they cite to and that is incorporated into the complaint, you see the BlackRock funds are, you know, like I said, they're in the top third and just shy of the top third.  The Vanguard funds that they point to as a comparator, over the last ten years, they were in the 31st percentile.  And if you think about that, Your Honor, that's plaintiff saying you were unreasonable and imprudent because you offered a fund that performed at the 37th percentile and, instead, you should have offered a fund that performed six percentile better, that is, in the 31st percentile.  And the Fidelity Freedom Index Funds -- and I point that out, Your Honor, only because the chart that is in the Morningstar Report lists the Freedom Index funds and also the Freedom funds -- plaintiffs have elsewhere said in the complaint the Freedom funds were not a prudent choice either.  So I just want to make that distinction.  The Fidelity Freedom Index Funds actually performed worse in

*Proceedings*

their percentile rankings than the BlackRock funds over the last three years, the last five years, and the last ten years.

Unless the Court has any questions, I don't have anything further.

THE COURT:  Would you like to address, briefly, the issue of Mr. Hall's status as plaintiff here?  I'm not sure it's the primary issue, but it was raised by the defense.

MR. BLUMENFELD:  Sure.  So I think the release is clear.  He has released the claims that are the subject of his lawsuit and also agreed, to the extent that he has some claim that is not released, that he was agreeing not to participate in any way, shape, or form in any sort of class action.  The case law, the contract, the terms of that are clear and prohibit him from participating in this action.  His claims are released, to start with, but even if they weren't, they would be barred because he's not allowed to participate in any sort of action.

THE COURT:  And how do you respond to the argument that the release doesn't apply to his standing in the shoes of the plan?

MR. BLUMENFELD:  So I think the case law is to the contrary, because the plan doesn't need to release the claims. He is the one who needs to release the claims.  The cases that we cite in our brief, I think, make that point, including the, I believe it's the *George Washington University* case out of the D.C. Circuit which affirmed dismissal of the *Howell v. Motorola*

*Proceedings*

case, which affirmed summary judgment on a release even though those claims were also brought on behalf of the plan in both of those contexts.  And he's also agreeing not to participate in a lawsuit, which, again, means to the extent the claim is not released, he personally is agreeing not to participate in a lawsuit and shouldn't have filed this action in court.

THE COURT:  Thank you.

MR. BLUMENFELD:  There is one other thing that I just wanted to address briefly, Your Honor.  I apologize for having forgotten about it.  There's a footnote in plaintiffs' brief where they say, We should be allowed to amend.  My answer to that, Your Honor, is that's not a motion for leave to amend. Plaintiffs' counsel know that that's not a motion for leave to amend.  It's the same thing they tried in the *Smith v. CommonSpirit* case, and the Sixth Circuit rejected, and I would ask that you do the same thing.  Them dropping a footnote saying they should be allowed to amend is like me saying, You should allow them to amend and then you should dismiss the amended complaint for reasons that I haven't told you about yet and that aren't the subject of a motion and for a complaint that doesn't exist yet.  If they're going to be allowed to amend, they should be forced to go through that process.  And in the meantime, I would say Your Honor can rule on the current complaint, the current motion to dismiss, and I would ask you to dismiss the complaint and then enter judgment based on it.

*Proceedings*

THE COURT:  Thank you.

MR. BLUMENFELD:  Thank you, Your Honor.

THE COURT:  Mr. Shah?

MR. SHAH:  Good morning, Your Honor.  May it please the Court, James Shah on behalf of plaintiffs in both cases.

I would like to start with the standard.  There was a fair amount of discussion in the briefing about what the appropriate standard is and the suggestion that somehow the *Dudenhoeffer* case from the Supreme Court and the *Hughes* case placed some kind of heightened pleading standard in ERISA actions on plaintiffs.  And I would just like to note that in *Dudenhoeffer*, the Court actually reversed the dismissal of ERISA claims and specifically said that it declined -- the Supreme Court declined to impose a presumption of prudence.  And so I think that any suggestion in the briefing that *Dudenhoeffer* somehow heightened the pleading standard cannot be found in the actual text of the opinion itself.  And, in fact, *Hughes*, which was recently decided, as counsel noted, specifically when it came to the standard and the burden in ERISA pleading, says, Given the Seventh Circuit's repeated reliance on this reasoning, we vacate the judgment below so that the court may reevaluate the allegations as a whole.  On remand, the Seventh Circuit should consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in *Tibble*, applying the pleading standard discussed in *Iqbal* and *Twombly*.

*Proceedings*                                                                20

So even the most recent Supreme Court case, in *Hughes v. Northwestern,* has made clear that this is a Rule 8 pleading analysis and that there is no heightened standard.  And I think that's important, because in reference to *Tibble*, in *Tibble*, the Supreme Court made very clear that fiduciaries, in the context of 401(k) plans, have an ongoing duty to monitor and remove funds that are imprudent.  And so what plaintiffs' complaints in both actions do here is plausibly allege that the plan fiduciaries in the respective actions did not monitor the BlackRock TDF investment in an appropriate way.  And, again, we're talking about a plausibility standard, not some heightened standard, and the fiduciaries here, as per the Supreme Court's guidance in *Dudenhoeffer* and in *Hughes*, are not afforded a presumption of prudence.  So let's look at -- and *Dudenhoeffer* talks about looking at pleadings in context when it comes to fiduciary violations.  *Sweda* out of the Third Circuit talks about taking a holistic look.

And Mr. Blumenfeld spoke at length about benchmarking, and I think what is important is how the allegations frame the TDF marketplace.  As we note in both complaints, Your Honor, the six largest target-date funds make up 75 percent of the target-date market.  And we have, as counsel noted, excluded the Fidelity Freedom funds from the comparators, and so the four other comparators make up 59 percent, nearly 60 percent of the entire target-date fund.  So is it plausible that in a relatively

*Proceedings*

niche area of target-date funds where six funds make up

75 percent, billions of dollars of the marketplace, that four of

those six could be apt comparators to the one that we allege was

underperforming?  I think the answer is, most assuredly, yes.

And to Your Honor's question to Mr. Blumenfeld, if they're not,

is there not an apt comparator?  So are fiduciaries really

investing billions of dollars in an investment where there's no

comparator that they can look to to determine whether or not the

decision to invest in that fund is actually prudent?

And I want to kind of take the flip side of that

because the suggestion was that we as plaintiffs' counsel are

arguing that the Court doesn't need to do any analysis at a

motion to dismiss stage as to whether or not a comparator is apt.

And I think in the briefing, they even suggested if all the

comparators start with C, then that's not a determination for the

Court at a motion to dismiss stage.  That's not what we're

saying.  Of course, as alleged, the comparator has to plausibly

be an apt comparator, an appropriate comparator.  And,

contextually, here, given the nature of the TDF marketplace, it

is our position that the comparators are, in fact, apt.  I think,

notably, when cases like *CommonSpirit* out of the Sixth Circuit

are mentioned and the other cases, those are circumstances where

you had one passive being compared to one active, all right, and

there are other variations in those cases.  For example, in

*CommonSpirit*, the District of Maryland, in the *Moler v.*

*University of Maryland* case that recently came down, specifically distinguished *CommonSpirit* in allowing underperformance claims to go forward, and the Court said -- the Sixth Circuit affirmed the district court's dismissal of plaintiff's complaint where the plaintiff had not plausibly pleaded that this ERISA plan acted imprudently merely by offering actively managed funds in the mix of investment options.

So what we have alleged here with the comparators are two passive comparators in the TDF marketplace of the big six -- I guess accounting used to be, like, the Big 5, but, you know -- and two active. So the defendants take issue with a passive-active comparison, but they really don't have any argument for how two of the largest six comparators that are also passive are somehow problematic. That fact alone takes us completely out of the realm of the other cases that were mentioned. In fact, the *Salesforce* case out of the Ninth Circuit, also markedly different, the plaintiffs' claims there, it truly was just a passive is better than active; they should take these nine active funds and they should have all been passive. That's not what we're saying here. We're not saying that BlackRock should have been some other type of fund. So completely different --

THE COURT: Help me understand what you are saying. Help me understand what the allegations in the complaint are, which the Court has to --

*Proceedings*

MR. SHAH:  Sure.

THE COURT:  -- and will accept as true under 12(b)(6). What are the allegations that demonstrate the breach of the fiduciary duty?

MR. SHAH:  Right.  So to that point, what the complaint details numerically over a decade period, when you look at the -- when one looks at the BlackRock TDFs from a performance standpoint and compares them to the four apt comparators as pled, that there was significant underperformance for that entire time, I think what the complaint --

THE COURT:  So how could you argue in 2021 in *Wehner v. Genentech* that BlackRock TDF was a comparator for demonstrating underperformance by another fund?

MR. SHAH:  So in *Genentech*, I think it's important to note there that what was alleged in *Genentech*, which were custom TDF funds -- so *Genentech* had custom funds; they weren't BlackRock or Vanguard; it was simply a comparison that those funds even underperformed the BlackRock funds -- so there's no allegation that the BlackRock TDFs were the gold standard or were prudent or were appropriate.  So I understand why they make that argument, but that in no way detracts from the allegations here regarding the performance -- the elongated poor performance. And I would like to point out that -- and I know that we get accused in every brief, in these briefs in particular, of engaging in some type of hindsight analysis -- that is absolutely

*Proceedings*

not the case.  And courts in this district -- and we cite them -- and elsewhere have noted where a complaint provides real-time data, that is, information that was or should have been known to the fiduciaries at the time, that that is not a hindsight analysis.  So the allegations in the complaint here -- for example, if you look at second quarter 2017, all right, that data on the three- and five-year basis, annualized basis, that data was all available to the fiduciaries at the time, so --

THE COURT:  Fiduciaries are constantly looking at data in which some funds are doing better and some funds are doing worse, and at one moment of time, you can compare one fund to another and say, relatively speaking, this one is doing poorly.  But these are funds that have a life of 30, 40, 50 years; they're designed to allocate risk and grow over time.  So how is -- and I understand; I've looked at -- there are a lot of charts in there and, you know, some of them show a modest difference, some of them show a larger difference, some of them show BlackRock doing a little bit better than the comparator funds in certain quarters -- how is it that that by itself could form the basis for concluding that the plan administrators were breaching their fiduciary duties or not adequately monitoring simply because there were quarters, or even years, in which the BlackRock TDF fund was not getting the same returns as Vanguard or Fidelity?

MR. SHAH:  And I think that's an important distinction.  Again, it's not a hindsight analysis.  The fiduciaries for each

*Proceedings*

of those quarters that we include the data for, at that time, they had information that would have shown them on a three- and five-year period just how significantly, from a performance standpoint, they were trailing the other four TDFs in the marketplace.  The hindsight analysis --

THE COURT:  But isn't that argument that they should have made the decision at that point to pull out and take away that option and then the participants would have no idea 10 or 15 or 20 years later whether that had been a good idea or a bad idea; isn't that exactly what fiduciaries of ERISA plans aren't supposed to be doing?

MR. SHAH:  No.  In fact, I disagree with that, Your Honor.  In fact, we address this in the complaint, that we say that the industry standard is to look at three- and five-year time horizons for fiduciaries and make determinations about the prudence of investments that are offered in the menu.  And the complaints also further allege that if -- the notion you have to wait 25 years to see if a TDF was appropriate or prudent, if you're looking over that period of time, you have many of the vintages that are out of their life span, are no longer even in play.  And we also allege in the complaints that the average person in this day and age, which is much different from when I started my career, is in the same job for just slightly over four years.  So there is a lot of movement in and out that also has to be considered from a demographic standpoint.

*Proceedings*

And, again, from having -- on the standard under *Iqbal* and *Twombly* and taking the allegations in the light most favorable to the plaintiffs, we have addressed these issues as to why a three- and five-year time horizon is correct, why we are not engaged in a hindsight analysis, but we provide real-time data that would have been and should have been made available to the fiduciaries at the time, and we demonstrate significant underperformance.  To try to demonstrate that somehow our pleadings don't demonstrate significant underperformance, in defendant's briefing, they pick one vintage, the 2050 vintage, and they say, Oh, look, for this three- and five-year period -- now, again, one vintage in one cherry-picked period -- they say, Look, it's about a one percent difference.  What does that mean?  But the data that we have in there is annualized.  So even taking their cherry-picked one, when you look at it over the three- and five-year period, compounded, it's a 3.36 percent difference over three years and an 8.3 -- almost 8.4 percent underperformance over five years.  And if you take that same vintage and do a different three- and five-year period -- again, this is the one they are pointing to, saying it wasn't underperformance -- if you look at it from Quarter 1, 2018, over a three-year period, it's 6.57 percent underperformance; in five years, it's 18.56 percent underperformance.  That is substantial.

And I think another important point -- Your Honor asked me, you know, what do we plead here -- these are the QDIAs, all

*Proceedings*                                                                27

right, so these are the default investments, the TDFs.  So these are the core assets.  As we allege in the case of Booz Allen as of, I think a year and a half ago, 29 percent of the $6 billion fund was in this TDF, 35 percent for Capital One.  So these are the core assets.  These are the assets where if people who -- as we also allege, most 401(k) participants are not particularly savvy when it comes to investing -- if they don't make an election as to where to put their money, it defaults into these funds.  I'm not saying that gives it a heightened burden, but, contextually, holistically, it's another consideration when you have specific allegations of a decade of underperformance.  And the only hindsight analysis being done in this case is when defendant says, Oh, look, over the last year, they've improved a little bit.  But the case law -- we cite this -- is *Legion*, that when it comes to a fiduciary's conduct, the court looks to what it offered at a point in time, right, not what transpired after. At a point in time, was there a breach or was there not a breach? Whether what occurred after inures to the benefit or detriment is not the issue.  The breach occurs at the time when something was presented.

I would also just note on the benchmarking that even courts in this district -- in *In Re MedStar*, in the *IQVIA* case -- have determined that where you have one passive comparator in a TDF world and an active -- when you have a -- sorry -- when you have an active TDF and a passive comparator, that at a motion to

*Proceedings*

dismiss stage, that is sufficient and that it's not for the Court to determine whether or not that that's plausibly apt, and that there's no further analysis that needs to be done.  Again, we're well beyond that here because we have the two passive and the two active comparators.

I think that largely addresses the benchmark arguments that my colleague made.  I would --

THE COURT:  Well, how do you respond to the other arguments that are made, setting aside the passive and the active, that you have the "to retirement" and you have "through retirement," and, obviously, the risk allocation and the way in which those funds are invested is going to vary if you have a time horizon that is ending at the time of retirement or continuing through it?

MR. SHAH:  Sure.  We certainly would acknowledge and do not allege that these investments are 100 percent identical, right?  But as the case law says, there is no perfect comparator.  And I think what's notable is that in the complaint, we're not silent about glide path in "to" and "through."  Allegations 37 through 40 -- paragraphs 37 through 40 in the Booz Allen complaint -- 38 through 40, we acknowledge that there are differences, but we also plead why those differences are not material when it comes to a holistic analysis of the TDF.  Again, particularly when you're looking at there are six TDFs -- and I can't emphasize this enough -- that make up three-quarters of the

*Proceedings*

market, right?

So, again, going back to *Twombly* and *Iqbal* in the pleading standard, alleging that four of those are apt comparators, it's hard to see how that isn't plausible, particularly in light of all the other allegations. So I think -- and some courts have addressed this, and we cite these in the brief -- but several courts specifically have even looked at the fact that there are different investment strategies and different equity allocations and said that in and of itself, particularly the motion to dismiss, doesn't lend itself to a finding at this procedural stage; that the comparators are not apt; that that is still left for after discovery and down the road.

And I would also point out, this isn't a particularly surprising notion, because we're not trying to compare a small cap to a high-risk international tech investment, right? Even when you do comparators, benchmarking, whether it's a small cap or a large cap, you're still going to have -- those large-cap investments, small-cap investments all have sub-assets. They're never going to be identical, right? So the notion that, particularly at this stage, that distinctions or some differences, five percent here, two percent here, that that is so meaningful that it can't plausibly be an apt comparator doesn't make sense, because that would translate to the entire marketplace in terms of, you know, what could a fiduciary look

*Proceedings*

to.  Well, basically, it is just an attempt to insulate and inoculate fiduciaries making decisions pertaining to the target-date marketplace from any potential scrutiny, and that is impossible to square with the case law that says the duties taken on by ERISA fiduciaries are the highest known to law.

When you combine the applicable pleadings standard with the very specific and significant allegations of long-term significant underperformance of these TDFs as compared to four of the five other TDFs that make up the vast majority of the marketplace, we think that we have more than satisfied our burden here.

Let me just say one additional thing:  My colleague mentioned, Well, they don't talk about, you know, the 48th largest TDF, right?  But, again, these are two companies that have hundreds of millions -- billions of dollars invested in the TDFs.  If we had come in and said an apt comparator was XYZ TDF that has a total asset class -- a total asset base of $100 million, they would have said, Mr. Shah is making an incredulous statement, that Booz Allen should have put its $1.5 billion into XYZ fund that's not even managing 10 percent of that.  So, again, plausible?  Are these plausible benchmark comparators?  Absolutely, in this marketplace.

THE COURT:  Thank you.

MR. SHAH:  Appreciate the Court's time.

MR. BLUMENFELD:  May I have a few minutes for rebuttal?

*Proceedings*

THE COURT:  You may.

MR. BLUMENFELD:  Thank you.

I would like to address a legal question and then drill down a little into some of the facts that counsel was talking about.

First, we haven't said that this is a heightened pleading standard case, but the Supreme Court, in *Hughes* -- this isn't me talking; this is the courts of appeals since used -- have made clear that you need to identify a meaningful benchmark. *Hughes* came out of the Seventh Circuit, and the first court in the Seventh Circuit to have addressed the impact of *Hughes* was the *Albert v. Oshkosh* case.  The Seventh Circuit there held *Hughes* didn't change the law, and affirmed Rule 12 dismissal of similar kinds of claims.

Getting back to *Twombly*, sort of the start of it all. I went back to look at what was going on in the *Twombly* case that led the Supreme Court to reach the ruling that it did.  They didn't have charts and graphs.  They had a map, and the map showed all of the places around the country where the different defendants, apparently, were located right next to each other but weren't competing, and the plaintiffs alleged that, and they also alleged there was an agreement by them not to compete.  And that was the sort of thing that the Supreme Court said was not sufficient to state a claim.  Applying that same kind of analysis to the charts and graphs that are in the complaint here is fully

32

*Proceedings*

consistent with *Twombly*, fully consistent with *Hughes* and all of the courts of appeals to have reached these issues.

Plaintiffs talked about the active versus passive and basically said, We don't have an answer as to the Fidelity and Vanguard target-date funds. That's not true. The *Meiners v. Wells Fargo* case out of the Eighth Circuit specifically addressed it. It wasn't about active versus passive. Plaintiffs said that in their briefs, but it doesn't mention active versus passive at all. Instead, they said that the Vanguard target-date funds, the same one these plaintiffs are pointing to, were not comparable to the Wells Fargo target-date funds because they had different allocations to bonds, the same differences that I'm talking about here. And while plaintiffs may say some of those allocation differences are small, those small differences in allocations reflect different risks that different plan fiduciaries are allowed to take. And the question is not can plaintiffs identify a better performing target-date fund; the question is whether the target-date fund that's in the plan was outside the range of reasonable judgments that other fiduciaries make, and it's not.

And the contrary, you know, you heard Mr. Shah talk about the fact that three- and five-year performance history is their benchmark. But if that's true, in the time period that the BlackRock target-date funds were last, according to the allegations in the complaint, one of the other target-date funds, one of the other four was fourth. That target-date fund also

*Proceedings*

would be imprudent, because on a three- and five-year basis, there are three other better target-date funds in the marketplace that did better, and one of them was third, and that means there are two other target-date funds that did better.  And what you're left with is their allegations really boil down to they found a better target-date fund in the marketplace.  That's not relevant.  What's relevant is whether the target-date fund that's in the plan fell outside the range of reasonable judgments that fiduciaries make, and they have no answer to that, Your Honor.

And I would say further -- you know, you pointed out the *Genentech* argument, and we think you're right to focus on that issue -- I would say further, plaintiffs' own argument would mean that the Fidelity target-date funds that they point to as appropriate comparators and the Vanguard funds that they point to as appropriate comparators also would not be prudent investment options over the last two years because they were last or second to last during that time period.  That's why you can't do what you are asking plaintiffs' counsel about, right?  You can't be jumping in and out of an investment option just because at a point in time, its three-year performance or five-year performance happens to be lower than something else.  That's why the Supreme Court talked about the range of reasonable judgments that fiduciaries make and why the courts -- *CommonSpirit*, *Davis v. Salesforce*, *Meiners*, *Albert v. Oshkosh* -- are rejecting these sorts of claims, because plaintiffs' arguments that they're not

engaged in hindsight is to say, Well, as of Q2 2017 -- I think was the time period he talked about -- the BlackRock funds performed lower than the others.  But that performance number as of that point in time says nothing about what the performance is going to be subsequent to that date or what the risks are of the fund at that point in time or subsequent to that date.  That's where the hindsight comes in.  It only works if, in hindsight, the BlackRock target-date funds ended up performing worse; and, here, we know they didn't.

I don't think I have anything further unless the Court has any questions.

THE COURT:  I do not.  Thank you.

MR. BLUMENFELD:  Thank you, Your Honor.

THE COURT:  Do you wish to be heard?

MR. SHAH:  Do you wish me to be heard?

THE COURT:  This is your chance if you want to take it.

MR. SHAH:  I will be very brief.  Famous last words, I know.

In terms of the *Meiners* case, the Eighth Circuit case, the Eighth Circuit specifically said that the plaintiffs there failed to plead underperformance of any kind.  They just pointed to one, in that case, the Vanguard that had outperformed the Wells Fargo fund.  They did in -- I think it's footnote 2 -- they did note that the district court had noted that there were some differences in the investment strategy between the two funds.

*Proceedings*

But to say that that was fundamental to the holding, I think, ignores the fact that the Eighth Circuit noted that the plaintiffs had, at base, failed to plead an underperforming investment.

Outside the range of reasonableness, if, essentially, last over a decade's worth of data in a QDIA isn't plausibly outside the range of reasonableness of the four apt benchmarks, then where does that leave a plan participant?

And, lastly, with respect to Mr. Hall, the *Lerner* case from the Southern District of New York that we cite in our briefing says that the vast majority of cases that have addressed the issue say that a plan participant cannot release the claims of a plan, and have allowed individuals who have signed such agreements to move forward with their claims on behalf of the plaintiffs.

Thank you very much for your time here, Your Honor. Appreciate it.

THE COURT:  Thank you.

Well, this matter comes before the Court on the motions to dismiss in both cases, and I've listened carefully to the arguments of counsel and spent a lot of time looking at the cases and reading the complaint.  And having considered the standard under 12(b)(6), applying *Iqbal* and *Twombly*, I find that it is appropriate, and the Court will grant the motions to dismiss in this case.

*Proceedings*

Count 1 alleges that the defendants breached a fiduciary duty of prudence by continuing to offer the BlackRock TDFs in both of these plans when it should have been known to a prudent fiduciary that they were underperforming in comparison to other TDFs offered in the market.  And in Count 2, plaintiffs allege that Capital One failed to adequately monitor the committee and prevent the alleged breach.  And then Count 3 is pled in the alternative, alleging liability for defendants' knowing breach of trust.

With respect to Count 1, the Court finds that the plaintiffs have failed to set out circumstantial factual allegations from which the Court may reasonably infer that the decision to retain BlackRock was the product of a flawed decisionmaking process.  Plaintiffs fail to allege facts that demonstrate BlackRock TDFs severely underperformed the comparable TDFs or that, in fact, the comparable TDFs were appropriate, meaningful benchmark comparators.  The complaint lacks facts showing that the TDFs shared the same investment strategy, investment style, risk profile, or asset allocation. The Court accepts that the differences that have been identified between actively managed and passively managed, the time horizons of "to retirement" versus "through retirement," and the different allocations of bond and equity mixes is fatally defective in plausibly stating a claim, and I find that Counts 2 and 3 are derivative of Count 1 and, therefore, must be dismissed.

*Proceedings*

I do find that Mr. Hall, with respect to the *Capital One* case, is barred from bringing these claims in his individual capacity because of the severance agreement he entered, although it is a, I think, troubling circumstance that the weight of the case law does reflect that he cannot release the claims of the plan.  So I'm going to dismiss this case without prejudice.

I understand the argument made with regard to what goes on from here.  I'm going to give the plaintiffs an opportunity to file an amended complaint if there's a good-faith basis for doing so, and I'll give you 14 days to make that decision, but I would caution that plaintiffs should think carefully about whether or not there's a way to move forward and whether that makes sense.  And I realize there are other cases around the country and I may not be the only judge to be weighing in on this, but based and all the information that I've seen, the weight of the case law, I do find that dismissal is appropriate, and both cases are dismissed at this time without prejudice.

Is there anything else I need to address this morning on behalf of the plaintiffs?

MR. SHAH:  Nothing from the plaintiffs, Your Honor.

THE COURT:  Thank you.  On behalf of the defense?

MR. BLUMENFELD:  No, Your Honor.  Thank you.

THE COURT:  Thank you.  I want to thank counsel on both sides.  As you've both noted, you're used to these battles, and I'm sure there will be more of them.  It was well argued and well

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

briefed, and I appreciate the efforts on the part of all parties.

Thank you.  Court will be in recess.

*     *     *     *     *

CERTIFICATE OF REPORTER

I, Diane Salters, hereby certify that the foregoing transcript is a true and accurate record of the stenographic proceedings in this matter.

/s/ Diane Salters
_____

Diane Salters, CSR, RCR, RPR
Official Court Reporter